# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Anthony C. Green,

     Plaintiff,

v.

Kelly Lake, Kevin Moser, Steven Sayovitz, Ann Zimmerman, Nicole Marvel, Greg Swenson, Elizabeth Barbo, Bryce Bogenhol, Anthony Bastien, Jesse Peterson, Jesse Berglund, Amanda Shaller, *in their individual and official capacities*

     Defendants.

Case No. 14-cv-1056 (ADM/SER)

**REPORT AND RECOMMENDATION**

---

Anthony C. Green, *pro se*; and

Susan M. Tindal, Iverson Reuvers Condon (for Defendants Kelly Lake, Anthony Bastien, and Jesse Peterson), James H. Clark III, Minnesota Attorney General's Office (for Defendants Kevin Moser, Steven Sayovitz, Ann Zimmerman, Nicole Marvel, and Greg Swenson), and Daniel P. Kurtz, League of Minnesota Cities (for Defendant Bryce Bogenhol).

---

STEVEN E. RAU, United States Magistrate Judge

   This matter is before the Court on Defendants' motions to dismiss Plaintiffs' Amended Complaint.[1] (ECF Nos. 22, 35, 53, 65). This matter was referred for the resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local

---

[1] Defendant Bogenhol filed a motion to dismiss; Defendants Bastien, Lake, and Peterson filed a motion to dismiss; and Defendants Moser, Linkert, Marvel, Swenson, and Sayovitz filed two motions to dismiss: one in their official capacities and one in their individual capacities. While the other Defendants listed have not filed motions to dismiss, the Court's Report and Recommendation applies to all Defendants because Green's complaint asks for relief against all Defendants.

Rule 72.2. For the reasons stated below, this Court recommends Defendants' motions be granted and this matter be dismissed with prejudice.

## I.     BACKGROUND

### A. Procedural Background

Plaintiff Anthony C. Green is civilly committed to the Minnesota Sex Offender Program ("MSOP") in Moose Lake, Minnesota. He initiated this lawsuit on April 11, 2014 asserting various constitutional claims against numerous defendants. (ECF No. 1). This case was then stayed pending resolution of a motion for class certification by individuals civilly committed to MSOP. (ECF No. 5). Upon court order, Green amended his complaint on July 8, 2016. (ECF Nos. 13, 14). Green's amended complaint asserted the same claims, added further supporting facts, and removed some defendants. (Am. Compl., ECF No. 14). The stay was lifted on April 14, 2016 and Defendants Bogenhol, Bastien, Lake Peterson, Moser, Linkert, Marvel, Swenson, and Sayowitz filed motions to dismiss. (ECF Nos. 12, 13, 22, 35, 53, 66). The case was stayed again on June 30, 2017 because it was deemed sufficiently related to *Karsjens, et al. v. Piper, et al.*, Case No. 11-cv-3659 (DWF/TNL). (ECF No. 79). The new stay was lifted on October 22, 2018. (ECF No. 86). The Court permitted the parties to file supplemental briefing addressing any changes in law that may affect the Court's analysis of the already-submitted motions to dismiss. (ECF No. 87). The parties submitted their supplemental briefs and the motions are ripe for determination. (ECF Nos. 89, 90, 91, 93).[2]

---

[2] Defendants argue Green's claims are precluded by a ruling in the class-action litigation of *Karsjens v. Jesson*, where the Court found MSOP's policies constitutional. 336 F. Supp. 3d 974, 998–98 (D. Minn.

### B. Factual Allegations

### 1.    Unreasonable Search and Seizure

Green claims he was subjected to illegal searches and seizures on multiple occasions at MSOP. On September 28, 2010, Green claims he was forcibly subjected to an unclothed visual body strip search ("UVBSS")[3] in an observation cell for contraband, which was never found. (Am. Compl., at 5). He claims another UVBSS was performed again on March 24, 2011 by MSOP officers in full riot gear. (Am. Compl., at 5). Green alleges that unidentified MSOP employees "allowed A-Team members and unit staff to attack Plaintiff without cause or provocation" and that he was thrown to the ground and choked by an MSOP employee. (Am. Compl., at 8). Green claims he refused the UVBSS during the first incident and had his clothes forcibly cut off, and claims he disagreed with the UVBSS but complied in the second incident. (Am. Compl., at 5).

On June 13, 2012, Green claims MSOP employees again forced an UVBSS on him while the Carlton County Sheriff effected Green's arrest. (Am. Compl., at 10). He claims this search, "humiliate[ed] him in the presence of female staff." (Am. Compl., at 11). Green states MSOP employees "stormed into the visiting room in full riot gear and attacked plaintiff from behind" while he was handcuffed. (Am. Compl., at 12). Green claims Defendant Barbo, an MSOP Assistant Director, "had no reasonable suspicion or

---

2018). While this Court agrees that *Karsjens* is relevant to the analysis here, the Court "emphasize[d] that its conclusions solely address Plaintiffs' classwide claims of systematic constitutional violations"—and did not foreclose individual claims on alleged constitutional violations. *Id.* at 997. Accordingly, the Court finds it appropriate to address Green's claims with respect to the specific enforcement of those policies as applied to Green.
[3] The Court uses UVBSS to refer to both the singular and plural versions (unclothed visual body strip search and unclothed visual body strip searches).

justification to approve the unconstitutional strip search" and that Green was not resisting, was not fighting back, and not threatening" during the entire incident. (Am. Compl., at 11–12).

Green also claims his placement in Protective Isolation/Administrative Restriction ("AR status") for extended periods of time over twenty-four hours violates his Fourth Amendment rights.[4]

### 2.    Unconstitutional Policies

Green's complaint repeatedly states that MSOP policies were applied to him unconstitutionally, failed to support a legitimate government interest, and did not provide him proper procedural protections. He identifies "Relevant MSOP Policies" and summarizes the contents of these policies. (*See* Am. Compl., at 16–19). Green explains that an individual at MSOP may be placed on AR status in the High Security Area ("HSA"), that an individual on AR status has a right to appeal this status and her/his conditions during that time, and under what circumstances AR status must be discontinued. (Am. Compl., at 16–19). Green also explains MSOP's policy on UVBSS: the manner in which they should be performed, and the steps MSOP must follow if an individual refuses an UVBSS. (Am.

---

[4] Administrative Restriction "means any measure utilized by MSOP to maintain safety and security, protect possible evidence and prevent the continuation of suspected criminal acts." (ECF No. 26, at 3) (quoting MSOP Policy No. 301.084). This includes "increased monitoring of the client, limiting programming accessibility, reduction in or loss of privileges, restricted access to and use of possessions, and separation of a client from the normal living environment." (ECF No. 26, at 3) (quoting MSOP Policy No. 301.084). While Administrative Restriction is not defined in the complaint, the Court may consider MSOP Policy defining it because regulations of an agency are public record. *Taradejna v. General Mills, Inc.*, 909 F. Supp. 2d 1128, 1133 n.4 (D. Minn. 2012).

Compl., at 18). Finally, Green explains that MSOP policy does not allow individuals to call their attorneys. (Am. Compl., at 19).

### 3.    Due Process and Excessive Force

Green argues MSOP staff placed him in HSA for extended periods of time without due process protections. (Am. Compl., at 6). He claims he should have had some form of hearing before being placed in HSA because it violated his liberty interests. (Am. Compl., at 7).

Green claims Defendant Marvel used excessive force when restraining him during the March 24, 2010 incident. (Am. Compl., at 9). Green states that "Marvel, while trying to remove Plaintiff's Do Rag and shoes, twisted the handcuffs and did damage to Plaintiff's wrists." (Am. Compl., at 9).

### 4.    Other Concerns

Green argues his Fourth and Fourteenth Amendment rights were violated when he was denied access to his property while in HSA. (Am. Compl., at 6). Green argues the following restrictions while he was in HSA were illegal: only being allowed one book at a time, being served meals in his cells, not being allowed to participate in any off unit activities, and being restricted to one thirty-minute period outside his cell per day. (Am. Compl., at 6).

### C.  Specific Factual Allegations Against Defendants

### 1.    Defendants Berglund, Moser, Zimmerman, Lake, Bogenhol

Green states Moser is the Director of MSOP, Zimmerman is the Program Manager for MSOP, Lake is the Carlton County Sheriff, and Bogenhol is the Moose Lake Police

Chief. (Am. Compl., at 3–4). Aside from being listed as a party to the lawsuit, none of these Defendants are mentioned anywhere in the complaint. The Court does not address the complaint for claims against these Defendants because Green does not allege they were personally involved or responsible for any constitutional violations.[5]

### 2.    Defendant Sayovitz

Green states Sayovitz was an A-Team Supervisor at MSOP. (Am. Compl., at 4). Green claims Sayovitz "informed Assistant director [sic] Defendant Barbo about his intention to be granted approval for the 'unclothed visual body search.'" (Am. Compl., at 11). Green also states Defendant Sayovitz told him "Anthony you brought this on yourself. We're going to remove the Police cuffs, and place our cuffs on you." (Am. Compl., at 32). Green alleges Defendant Sayovitz "implemented, retained, and carried out policies that violated the constitutional rights of Plaintiff." (Am. Compl., at 11).

### 3.    Defendant Marvel

Green states Marvel is an A-Team member at MSOP. (Am. Compl., at 4). Green claims Marvel filed a false incident report "accusing Plaintiff of pushing her into a brick wall and sustaining injuries." (Am. Compl., at 9). He claims Marvel used excessive force to cause harm to him, such as when Marvel "twisted the handcuffs and did damage to Plaintiff's wrists." (Am. Compl., at 9). Green alleges that Marvel implemented, retained,

---

[5] A plaintiff must allege Defendants' personal involvement or responsibility for the constitutional violations to state a § 1983 claim. *Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999). Here, the complaint only pleads actions by Defendants Sayovitz, Marvel, Swenson, Barbo, Bastien, Peterson, and Shaller. Green does not allege any personal involvement by Defendants Berglund, Moser, Zimmerman, Lake, and Bogenhol. The only time these Defendants are named is when Green states the positions of the Defendants he is suing. (Am. Compl., at 3–4). Green fails to state a claim against Defendants Berglund, Moser, Zimmerman, Lake, and Bogenhol, and the Court recommends dismissing any claims against these Defendants.

and carried out policies that violated the constitutional rights of Plaintiff." (Am. Compl., at 8).

### 4.    Defendant Swenson

Green states Swenson is a Security Counselor at MSOP. (Am. Compl., at 4). Green alleges Swenson "attacked Plaintiff from behind" and "shoved Plaintiff from behind" on March 24, 2010. (Am. Compl., at 8). He also alleges Swenson filed a false report on the March incident by stating Green was out of control. (Am. Compl., at 8). Green finally alleges Swenson "implemented, retained, and carried out policies that violated the constitutional rights of Plaintiff." (Am. Compl., at 8).

### 5.    Defendant Schaller

Green states Schaller is a security counselor at MSOP. (Am. Compl., at 4). Green claims Schaller "omitted the attack by Defendant Swenson" in her report of the incident that happened on March 24, 2010. (Am. Compl., at 9). Green alleges Schaller "implemented, retained, and carried out policies that violated the constitutional rights of Plaintiff." (Am. Compl., at 9).

### 6.    Defendant Bastien

Green states Bastien is a Deputy Carlton County Sheriff. (Am. Compl., at 4). Green alleges Bastien refused to "file criminal charges against MSOP employees for sexually assaulting him." (Am. Compl., at 23–24). Green claims "Defendant Bastien never booked Plaintiff into the jail under the booking and fingerprinting process." (Am. Compl., at 15). Green alleges Bastien "implemented, retained, and carried out policies that violated the constitutional rights of Plaintiff." (Am. Compl., at 15).

### 7.    Defendant Peterson

Green states Peterson is a Deputy Carlton County Sheriff. (Am. Compl., at 4). Green alleges Peterson removed Green's handcuffs so MSOP staff could place handcuffs on Green, and that Peterson "picked up the phone and stated: 'Ok, I understand, alright.'" (Am. Compl., at 13). Green alleges Peterson "implemented, retained, and carried out policies that violated the constitutional rights of Plaintiff." (Am. Compl., at 13).

### 8.    Defendant Barbo

Green states defendant Barbo is an "Assistant Director" at MSOP. (Am. Compl., at 11). Green claims Barbo "approved the forcible unclothed visual body strip search of Plaintiff" without any "reasonable suspicion or justification to approve the unconstitutional strip search . . . ." (Am. Compl., at 11). Green also claims that "[d]espite Defendant Barbo's knowledge that Plaintiff was already in the lawful custody of the Carlton County Sheriff's office, Defendant Barbo authorized MSOP employees . . . to suit-up in full riot gear . . . using excessive force on Plaintiff . . . ." (ECF No. 12, at 12). Green alleges Barbo "implemented, retained, and carried out policies that violated the constitutional rights of Plaintiff." (Am. Compl., at 13).

## II.    LEGAL STANDARD

When determining a Rule 12(b)(1) motion, courts "must distinguish between a 'facial attack' and a 'factual attack' on jurisdiction." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). In a facial attack, like that at issue here, 'the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending

against a motion brought under Rule 12(b)(6).'" *Carlsen*, 833 F.3d at 908 (quoting *Osborn*, 918 F.2d at 729 n.6).

In deciding a Rule 12(b)(6) motion, a court accepts as true all well-pleaded factual allegations and then determines "whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). The court must draw reasonable inferences in the plaintiff's favor. *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sletten & Brettin Orthodontics v. Cont'l Cas. Co.*, 782 F.3d 931, 934 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)); *accord Zink*, 783 F.3d at 1098. Facial plausibility of a claim exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Although a complaint need not be detailed to be sufficient, it must contain "[f]actual allegations . . . enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted); *see id.* ("The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion of a legally cognizable right of action." (quotations and citation omitted)). Additionally, complaints are insufficient if they contain "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

In assessing a *pro se* complaint, the court applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam) (quotation and citation omitted); *accord Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014). "If the essence of an allegation is discernible," then the court, in applying a liberal construction to *pro se* complaints, "should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Despite the liberal construal of such complaints, the *pro se* plaintiff "still must allege sufficient facts to support the claims advanced." *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone*, 364 F.3d 912, 914 (8th Cir. 2004)). Thus, *pro se* litigants "must set a claim forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law." *Stringer*, 446 F.3d at 802 (quoting *Cunningham v. Ray*, 648 F.2d 1185, 1186 (8th Cir. 1981)).

## III.    ANALYSIS

Green asks the Court to declare Defendants' actions illegal and unconstitutional; to order the Defendants "to cease the use of Protective Isolation/Administrative Restriction, the use of excessive force, unclothed visual body strip searches, [and] illegal searches and seizures without justification(s)"; to enjoin Defendants from "engaging in the same or similar practices [listed above]"; for actual or nominal damages; and the costs of the suit. (Am. Compl., at 22–23). Green's claims fail for multiple reasons. Some of Green's requested relief for injunctive relief and money damages is barred by the Eleventh Amendment. Green also fails to state plausible, legally cognizable claims on excessive force, unreasonable search and seizure, procedural and substantive due process, and unconstitutional policies.

### A.  Some of Green's Requested Relief is Barred

Green sues all Defendants in their official and individual capacities. Green seeks declaratory and injunctive relief, as well as monetary damages, but does not differentiate how the relief sought applies to Defendants.

The Eleventh Amendment bars suit against a state, absent a state's consent to filing of such a suit. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam). This immunity applies to claims against officials sued in their official capacities. *See, e.g.*, *Will v. Mich. Dep't of State* Police, 491 U.S. 58, 71 (1989). A federal court lacks jurisdiction over claims barred by the Eleventh Amendment. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). Thus, "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) (citing *Hafer v. Melo*, 502 U.S. 21, 30 (1991)); *Greenwalt v. Indiana Dept. of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005) ("[S]ection 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity."); *Wolfe v. Strankman*, 392 F.3d 358, 360 n.2 (9th Cir. 2004) (noting that injunctive and equitable relief are not available in § 1983 individual-capacity suits). To the extent Green seeks injunctive relief against Defendants in their individual capacities, the Court recommends dismissal. And to the extent Green seeks monetary relief against Defendants in their official capacities, the Court also recommends dismissal.

### B. Excessive Force Claims

The Eighth Amendment prohibits government authorities from using excessive force against prisoners. *Andrews v. Neer*, 253 F.3d 1052, 1061 (8th Cir. 2001). While Green is not a prisoner, federal courts consistently hold that Eighth Amendment principles apply to non-prisoners in government custody, like pre-trial detainees and civilly committed individuals. *See id*; *Serna v. Goodno*, 567 F.3d 944, 948–49 (8th Cir. 2009). Excessive force claims have two requirements. "The first requirement tests whether, viewed objectively, the deprivation of rights was sufficiently serious. The second requirement is subjective and requires that the inmate prove that the prison officials had a sufficiently culpable state of mind." *Irving v. Domire*, 519 F.3d 441, 446 (8th Cir. 2008).

The Court first evaluates Green's excessive force claim against Marvel. Green claims Marvel used excessive force when restraining him on March 24, 2010. (Am. Compl., at 9). Green states that "Marvel, while trying to remove Plaintiff's Do Rag and shoes, twisted the handcuffs and did damage to Plaintiff's wrists." (Am. Compl., at 9). Green also states that Marvel did not apply force "in an effort to maintain or restore discipline, but instead . . . to harm Plaintiff." (Am. Compl., at 9). The Eighth Circuit has established that the application of handcuffs, without evidence of a more permanent injury, is insufficient to support an excessive force claim. *See Crumley v. City of St. Paul*, 324 F.3d 1003, 1008 (8th Cir. 2003) ("[F]or the application of handcuffs to amount to excessive force there must be something beyond allegations of minor injuries."); *Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990) ("We do not believe that . . . allegations of pain as a result of being handcuffed, without some evidence of more

permanent injury, are sufficient to support [a] claim of excessive force."). Viewed objectively, Marvel cuffing Green is not a sufficiently serious deprivation of rights to meet the first requirement of an excessive force claim. *See Serna*, 567 F.3d at 948–49. Because Green's claim against Marvel does not meet the first requirement of an excessive force claim, the Court does not reach the second requirement. Green does not present a plausible excessive force claim against Marvel, nor  does he cite any caselaw or arguments against this Eighth Circuit precedent. *See Iqbal*, 556 U.S. at 678–81. The Court recommends dismissing Green's excessive force claim against Marvel.

The Court next evaluates Green's excessive force claims against Swenson and Sayovitz. Green alleges Swenson "attacked Plaintiff from behind" and "shoved Plaintiff from behind" on March 24, 2010. Green alleges Sayovitz "informed Assistant Director Defendant Barbo about his intention to be granted approval for the 'unclothed visual body search'" and told Green that he would place handcuffs on Green. (Am. Compl., at 11). Green does not allege any painful effects or lasting injury from Swenson's actions. Sayovitz's actions at most amount to verbal threats, which "are not constitutional violations cognizable under § 1982." *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985). Viewed objectively, Green's claim against Sayovitz is not a sufficiently serious deprivation of his rights to meet an excessive force claim. *See Serna*, 567 F.3d at 948–49. Because Green's claim against Sayovitz does not meet the first requirement of an excessive force claim, the Court does not reach the second requirement. Even when taking Green's allegations in the light most favorable to him, the Court does not find a plausible excessive force claim

against either Defendant. To the extent Green alleges any excessive force claims against Swenson and Sayovitz, the Court recommends dismissal.

Finally, the Court notes that Green claims that Cory Vargason, an A-Team member at MSOP, jumped on Green's back and began choking him. (Am. Compl., at 8). The Court does not address this allegation for an excessive force claim because Cory Vargason is not a named defendant in this suit.

### C. Unreasonable Search and Seizure Claims

"Involuntarily committed civil detainees have a Fourth Amendment right to be free from unreasonable searches and seizures similar to that of pretrial detainees." *Evenstad v. Herberg*, 994 F. Supp. 2d 995, 1002 (D. Minn. 2014) (citing *Serna*, 567 F.3d at 948). Whether the search or seizure of a civilly committed MSOP individual is reasonable depends on whether a legitimate government interest outweighs the invasion of personal rights involved. *Serna*, 567 F.3d at 949. To determine reasonableness, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).

Green alleges Defendants violated the Fourth Amendment by placing him in HSA for extended periods of time. (Am. Compl., at 5–6). A decision to place a civilly committed individual in HSA "if made by a professional, is presumptively valid . . . [and] liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the

person responsible actually did not base the decision on such a judgment." *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982).

Green has a constitutionally protected interest in reasonably non-restrictive confinement conditions. *See id.* at 324. But the decision to place Green into HSA temporarily is presumptively valid and the complaint contains no allegation of facts that support a reasonable inference that Defendants involved in this decision did not base it on accepted professional judgment. Green states he was placed in HSA for over twenty-four hours on September 28, 2010 and on March 24, 2011 but does not specify how long in either instance. (Am. Compl., at 5–6). His allegations lack facts about the scope, manner, and justification of this HSA placement. He gives no explanation as to why his extended stays in HSA were unreasonable. Even liberally construing Green's amended complaint, taking all the facts pled as true and making all reasonable inferences in Green's favor, the factual allegations on Green's HSA placements do not nudge the claim "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 678–81. The complaint lacks factual allegations to support a facially plausible claim that Green's HSA placements violated his Fourth Amendment rights. The Court recommends dismissing this claim.

Green also alleges Defendants violated the Fourth Amendment by subjecting him to UVBSS on September 28, 2010 and March 24, 2011. (Am. Compl. at 5, 11). What constitutes an unreasonable search is a fact-specific inquiry but the Supreme Court has found that visual body searches of prisoners and pretrial detainees, while affecting the privacy interests of inmates, are legal if conducted in a reasonable manner. *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). Even though civilly committed individuals are not prisoners,

courts have consistently found their rights to be similar to that of pretrial detainees. *See e.g.*, *Serna*, 567 at 948–49. Green alleges he was searched in two instances after being placed into HSA and stated one of these searches was for contraband that was not found. (ECF No. 5, at 23). Green states his clothes were forcibly cut off the first time and he only complied the second time because he did not want to repeat his first experience. (Am. Compl., at 5).

The Court does not find that Green has pled facts showing these searches to be unreasonable under the Fourth Amendment. The government interest in safe and orderly prisons is significant and the Supreme Court has taken judicial notice of the unauthorized use of drugs that plague our prison systems. *See Block v. Rutherford*, 468 U.S. 576, 590 (1984). While MSOP is not a prison, it is a treatment facility that faces some of the same safety concerns. MSOP has legitimate concerns in conducting an UVBSS when an individual at MSOP enters a new area, such as when Green entered HSA in both instances. MSOP is promoting the security of its facility by ensuring that individuals are not concealing drugs or weapons when leaving and entering new areas of the facility. *See e.g. Goff v. Nix*, 803 F.2d 358, 366–67 (8th Cir. 1986) (finding UVBSS constitutional under the Fourth Amendment because prisons have legitimate safety concerns). Green has not pled any facts about these two instances suggesting the searches were conducted unreasonably. While Green states his clothes were forcibly cut off in the first instance, MSOP has to unclothe an individual to conduct an UVBSS and Green refused to undress. (Am. Compl., at 5). Green does not plead any facts suggesting either of these searches were conducted in an abusive, offensive, or otherwise unreasonable manner. This Court

recommends dismissal of Green's Fourth Amendment claims concerning the searches on September 28, 2010 and March 24, 2011.

Green further alleges that a search on June 13, 2012 was unlawful. According to Green, he was subjected to an UVBSS while he was served with an arrest warrant by the Carlton County Sheriff's Department. (Am. Compl., at 10–11). Green claims this particular search was "humiliating" because it was done in the presence of female staff and an MSOP nurse. (Am. Compl., at 11). Given what the Supreme Court has said about the strong institutional interests in maintaining security, and the unusual circumstances here, Green's allegation of a body cavity search in front of female staff by itself does not state a claim for violating the Fourth Amendment. *See Story v. Foote*, 782 F.3d 968, 971 (8th Cir. 2015). Green does not allege that the search itself was done by a female staff member; he admits Peterson, the male Deputy Carlton County Sheriff performed the search. (Am. Compl., at 11); *see Richmond v. City of Brooklyn Center*, 490 F.3d 1002, 1008 (8th Cir. 2007) ("[S]trip searches should be conducted by officials of the same sex as the individual to be searched."). Here, the presence of the Carlton County Sheriff and the circumstances of effecting an arrest warrant on Green implies an emergency situation, or at the very least a heightened security situation, where MSOP had to take additional measures to ensure security. (*See* Am. Compl., at 11). In heightened security circumstances, the presence or participation of female officers during a UVBSS of a male inmate have been found constitutional. *See* 28 C.F.R. § 511.16 ("Visual searches may be conducted by staff members of the opposite sex in emergency situations with the Warden's authorization [in a prison]."); *see e.g.*, *Story*, 782 F.3d at 972 (finding constitutional the circumstances of a

17

female officer that may have observed a male inmate's UVBSS through surveillance video). Green does not allege facts suggesting the search was performed in front of female staff for an illegitimate interest, unrelated to MSOP's security interests. The Court does not find that Green alleges a plausible claim and recommends dismissal.

### D. Procedural Due Process

To establish a procedural due process violation, "a plaintiff, first must establish that his protected liberty or property interest is at stake. Second, the plaintiff must prove that the defendant[s] deprived him of such an interest without due process of the law." *Schmidt v. Des Moines Pub. Schs.*, 655 F.3d 811, 817–18 (8th Cir. 2011). If there is a protected interest at stake, the Court should "then consider what process is due by balancing the specific interest that was affected, the likelihood that the [MSOP] procedures would result in erroneous deprivation and the [MSOP's] interest in providing the process that it did, including the administrative costs and burdens of providing additional process." *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006).

Green argues he "was denied due process by MSOP Defendants due to his confinement in HSA." (Am. Compl., at 20). As a person civilly committed to MSOP, Green enjoys a protected—but not unlimited—liberty interest in freedom from unnecessary bodily restraint. *See Youngberg*, 457 U.S. at 319–20. Therefore, Green arguably had a protected liberty interest at stake when he was placed in HSA, which affords him some measure of due process.

But, even if placement in HSA implicates protected interests, the amended complaint contains no factual allegations that show Green received less than the process

he was due. Green provides conclusory allegations that the policy was unconstitutional, that it did not support a legitimate government interest, and that he did not receive any due process protections. (Am. Compl., at 7). But he makes no mention of whether he invoked MSOP's grievance process to challenge his HSA placement to a review panel. (*See* Am. Compl., at 19 (outlining MSOP's grievance procedure when an individual is placed in HSA)). In fact, Green does not claim he attempted to report his placement or that his complaints were denied in any form by MSOP employees. Even construed broadly, Green's complaint does not plead sufficient facts to present a facially plausible claim that he was denied procedural due process. To the extent Green brings a claim that the procedure by which was placed into and kept in HSA violated his procedural due process rights, the Court recommends dismissal for failure to state a claim upon which relief may be granted.

### E.  Substantive Due Process

"To establish a substantive due process violation, the [Plaintiff] must demonstrate that a fundamental right was violated and that [the Defendants'] conduct shocks the conscience." *Folkers v. City of Waverly, Ia.*, 707 F.3d 975, 980 (8th Cir. 2013). "Only in the rare situation when the state action is truly egregious and extraordinary will a substantive due process claim arise. *Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012). The question is "whether the extent or nature of the restraint . . . is such as to violate due process." *Youngberg*, 457 U.S. at 320. To determine the answer, the Court must balance Green's "liberty interest[] against the relevant state interests." *Id.* at 321. Furthermore, when deciding whether a civilly committed person's liberty interest in freedom from

unreasonable restraint, "courts must show deference to the judgement exercised by a qualified professional." *Youngberg*, 457 U.S. at 322. As stated above, that decision is "presumptively valid" and liability is only imposed when the professional substantially departs from professional judgment or practice. *Id.* at 322.

Green alleges his due process rights were violated when he was confined in HSA. (Am. Compl., at 20). Under *Youngberg*, Green has a constitutionally protected interest in reasonably nonrestrictive confinement conditions. *Id.* at 324. But the decision to temporarily place Green into HSA is presumptively valid and the complaint contains no allegations of facts supporting a reasonable inference that the Defendants involved in this decision did not base it on accepted professional judgment. Green failed to plead sufficient facts to withstand a motion to dismiss and the Court recommends dismissal of this claim.

Green also claims the "acts and omissions of Defendants constitute a violation of the due process clause . . . ." (Am. Compl., at 20). He alleges Marvel "twisted the handcuffs and did damage to Plaintiff's wrists," that Swenson "attacked Plaintiff from behind" and "shoved Plaintiff from behind," and that Sayovitz "informed Assistant Director Defendant Barbo about his intention to be granted approval for the unclothed visual body search." (Am. Compl., at 11). None of these actions rise to behavior that is "truly egregious" or that "shocks the conscience." *Stutton*, 668 F.3d at 557; *Folkers*, 707 F.3d at 980. Green does not plead any facts that rise to a substantive due process violation. The Court recommends dismissal of this claim.

### F. Unconstitutional Policies

Green claims MSOP's policies on UVBSS are unconstitutional and asks the court to "order Defendants to cease the use [of these searches]." (Am. Compl., at 22). Green alleges that MSOP employees forcibly cut his clothes off after he refused to an UVBSS and that MSOP employees forced an UVBSS in the presence of female staff. (Am. Compl., at 10–11). But Green does not identify what parts of the UVBSS policy at MSOP are unconstitutional or how they are unconstitutional. As explained above, MSOP has legitimate security concerns in performing these searches and the Eighth Circuit previously found MSOP's UVBSS searches constitutional in different settings. *See e.g. Goff*, 803 F.2d at 366–67 (finding UVBSS constitutional under the Fourth Amendment because prisons have legitimate safety concerns); *Beaulieu v. Ludeman*, 690 F.3d 1017, 1030 (8th Cir. 2012) ("[T]he MSOP's policy of performing unclothed body searches of patients before they leave the secure perimeter is not unreasonable."). Because Green makes conclusory statements on MSOP's use of UVBSS as unconstitutional without sufficient factual or legal explanation, the Court recommends dismissal of this claim.

Green also repeatedly states MSOP's policies were unconstitutionally applied to him and he summarizes certain MSOP policies. (Am. Compl., at 16–19). But, again, Green does not plead any facts explaining which sections of MSOP's policies his claims are aimed against, why these sections are unconstitutional, or how they have been applied to him unconstitutionally. Because Green fails to plead any plausible claim about the constitutionality of MSOP's policies, the Court recommends dismissal.

### G. Other Concerns

Green asserts a number of other claims. Green argues his Fourth and Fourteenth Amendment rights were violated when he was denied access to his property while in HSA. (Am. Compl., at 6). Green did not identify the property MSOP supposedly deprived him. Without providing that information, he cannot claim that MSOP deprived him of a protected property interest. Green fails to state a claim upon which relief may be granted. Similarly, for the claim that MSOP unlawfully denied Green his property, Green has not alleged he was treated differently from other similarly situated individuals based on a prohibited form of discrimination. Green fails to state a violation of his Fourteenth Amendment equal protection rights.

Green argues the following restrictions while he was in HSA were illegal: only being allowed one book at a time, being served meals in his cells, not being allowed to participate in any off unit activities, and being restricted to one thirty-minute period out of his cell per day. (Am. Compl., at 6). Green does not state what laws these restrictions violated or provide any caselaw to support his allegations of MSOP's restrictions being illegal. Green's claims do not establish plausible claims and the Court recommends dismissing these claims.

### H. Qualified Immunity

"Qualified immunity shields government officials from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would know." *Ferguson v. Short*, 840 F.3d 508, 510 (8th Cir. 2016). Courts examine "(1) whether the facts alleged or shown, construed most favorably to the plaintiffs,

establish a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged misconduct, such that a reasonable official would have known that the acts were unlawful." *Small v. McCrystal*, 708 F.3d 997, 1003 (8th Cir. 2013).

Here, Green's claims either do not establish constitutional violations or Green has failed to meet his pleading burden. To the extent no constitutional violation is established, Defendants are entitled to qualified immunity. To the extent Green failed to meet his pleading burden, his pleading deficiencies deprive the Court of the ability to analyze the claims fully, including whether Defendants are entitled to qualified immunity on those particular claims.

## IV.   RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** as follows:

1. Defendants' Motions to Dismiss, (ECF Nos. 22, 35, 53, 66), be **GRANTED**.

2. Green's Amended Complaint (ECF No. 14), be **DISMISSED WITH PREJUDICE.**


Date: January 30, 2019                    *s/ Steven E. Rau*
                                          Steven E. Rau
                                          United States Magistrate Judge
                                          District of Minnesota

                                          *Green v. Lake, et al.*
                                          Case No. 14-cv-1056 (ADM/SER)

## **NOTICE**

**Filings Objections:** This Report and Recommendation is not an order or judgement of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).