# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Anthony C. Green,

    Plaintiff,

v.

Kelly Lake, Carlton County Sheriff;
Kevin Moser, MSOP Facility Director;
Steven Sayovitz, MSOP A-Team Supervisor;
Ann Zimmerman, MSOP Administrator;
Nicole Marvel, MSOP A-Team Supervisor;
Greg Swenson, Security Counselor;
Amanda Schaller, Security Counselor;
Elizabeth Barbo, MSOP-Former Assistant Clinical Director;
Anthony Bastien, Carlton County Deputy Sheriff; and
Jesse Peterson, Carlton County Deputy Sheriff;
in their individual and official capacities

    Defendants.

**MEMORADUM OPINION
AND ORDER**
Civil No. 14-1056 ADM/SER

___

Anthony C. Green, pro se.

Susan M. Tindal, Esq., Iverson Reuvers Condon, Bloomington, MN, on behalf of Defendants Kelly Lake, Jesse Peterson, and Anthony Bastien.

James H. Clark, III, Esq., Assistant Minnesota Attorney General, Minnesota Attorney General's Office, St. Paul, MN, on behalf of Defendants Kevin Moser, Steven Sayovitz, Ann Zimmerman, Nicole Marvel, and Greg Swenson.

Daniel P. Kurtz, Esq., League of Minnesota Cities, St. Paul, MN, on behalf of Defendant Bryce Bogenholm.

___

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on

Defendants Kelly Lake, Jesse Peterson, and Anthony Bastien's (the "Carlton County

Defendants") Objection [Docket No. 95] to Magistrate Judge Steven E. Rau's January 30, 2019

Report and Recommendation [Docket No. 94] ("R&R").  Also before the Court is Plaintiff Anthony C. Green's ("Green") Motion to Accept Late Submission [Docket No. 96] and Green's Objection [Docket No. 97] to the R&R.

In the R&R, Judge Rau recommends granting the two motions to dismiss filed by Defendants Kevin Moser, Steven Sayovitz, Ann Zimmerman, Nicole Marvel, and Greg Swanson (collectively, the "MSOP Defendants") in their official and individual capacities [Docket Nos. 22, 53]; granting the motion to dismiss filed by Defendant Bryce Bogenholm[1] [Docket No. 35]; and granting the motion to dismiss or for summary judgment filed by the Carlton County Defendants [Docket No. 66].  The R&R also recommends dismissing Green's Amended Complaint [Docket No. 14] with prejudice.  For the reasons stated below, the Carlton County Defendants' Objection is sustained, Green's Motion to Accept Late Submission is granted, and Green's Objection is overruled.

## II. BACKGROUND

The background is set forth in the R&R and is incorporated by reference.  Briefly, Green is a civilly committed detainee at the Minnesota Sex Offender Program in Moose Lake, Minnesota ("MSOP").  Am. Compl. [Docket No. 14] ¶ 7.  The MSOP Defendants are all MSOP employees.  Id. ¶ 8.  The Carlton County Defendants are employed with the Carlton County Sheriff's Office.  Id.  Defendant Bryce Bogenholm is the Moose Lake Police Chief.  Id.

Green filed this 42 U.S.C. § 1983 lawsuit on April 11, 2014.  Green alleges that Defendants violated his rights under the Fourth and Fourteenth Amendments to the U.S.

---

[1] The caption of the First Amended Complaint [Docket No. 14] does not include Bryce Bogenholm as a named defendant, but Paragraph 8(j) of the First Amended Complaint lists "Bryce Bogenhol [sic]" as a defendant in this case.

2

Constitution. The allegations as taken from Green's Amended Complaint are as follows.

On September 28, 2010, the MSOP Defendants handcuffed Green and secured him in an observation cell in MSOP's High Security Area ("HSA"). Am. Compl. ¶ 11. Pursuant to MSOP policy, Green was required to submit to an unclothed visual body strip search ("UVBSS") upon being placed in HSA. Id. ¶ 43. If a detainee does not consent to the UVBSS, MSOP's policy requires staff to ask the detainee every 30 minutes for consent to the search. Id. ¶ 44. If the detainee still refuses to consent after four hours, MSOP staff may obtain authorization to perform a non-consenting search that includes cutting the detainee's clothing off with a scissors. Id. Green refused to consent to a UVBSS. Id. ¶ 11. After four hours, MSOP staff cut and removed Green's clothing to allow a search for contraband. Id.

On March 24, 2011, MSOP employees attempted to prevent Green from entering the MSOP dining room. Id. ¶ 18. MSOP Defendant Greg Swenson ("Swenson") attacked Green from behind and shoved him from behind into another MSOP staff member. Id. ¶¶ 18–19. During the altercation, MSOP Defendant Nicole Marvel ("Marvel") twisted Green's handcuffs while trying to remove his shoes and "Do Rag" and "did damage to [Green's] wrists." Id. ¶ 23. The same day as the March 24 altercation, Green was again placed in HSA. Id. ¶ 12. This time, he consented to the UVBSS search. Id.

On June 13, 2012, Carlton County Defendants Anthony Bastien ("Deputy Bastien") and Jesse Peterson ("Deputy Peterson") served Green with an arrest warrant at the MSOP facility. Id. ¶ 26. The deputies were escorting Green in handcuffs from the facility when MSOP Defendant Steve Sayovitz ("Sayovitz") informed MSOP Defendant Elizabeth Barbo ("Barbo") that Sayovitz intended to be granted approval for a UVBSS of Green. Id. ¶¶ 26, 28. Deputy

Bastien told Sayovitz that he did not agree with the UVBSS being conducted while Green was in Carlton County's custody and that the UVBSS should have been performed prior to the deputies' arrival. Id. ¶¶ 29, 32, 34. While Deputy Bastien was advising his supervisor of his concerns, Deputy Peterson removed the handcuffs from Green. Id. ¶¶ 32, 34. MSOP Defendants then placed MSOP's handcuffs on Green and, without Deputy Bastien's knowledge, conducted a UVBSS on Green in front of a female staff member. Id. ¶ 27, 32.

In addition to these incidents, Green alleges that MSOP's placement policy authorized MSOP staff to place Green in HSA for extended periods exceeding 24 hours without due process protections. Id. ¶ 13.

Green asserts a claim against the MSOP Defendants for violation of his procedural and substantive due process rights under the 14th Amendment (Count I), a claim against all Defendants for illegal search and seizure in violation of the Fourth Amendment (Count II), and a claim against all Defendants for excessive force in violation of the Fourth Amendment (Count III). Green also alleges that MSOP's client search and protective isolation policies are unconstitutional. Am. Compl. ¶¶ 50, 57.

The R&R recommends dismissing all of Green's claims for failure to state a plausible claim for relief. R&R at 12–21.

### III. DISCUSSION

**A. Standard of Review**

In reviewing a magistrate judge's report and recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); see also D. Minn.

L.R. 72.2(b). A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

**B. Carlton County Defendants' Objection**

The Carlton County Defendants ask the Court to adopt the R&R with one modification. In addressing Green's claims that he was subjected to an unlawful UVBSS on June 13, 2012, the R&R states, "Green does not allege that the search itself was done by a female staff member; he admits Peterson, the male Deputy Carlton County Sheriff performed the search." R&R at 17. The Carlton County Defendants argue that the record establishes Deputy Peterson did not conduct the search and did not allow staff from the MSOP to perform the search while Carlton County's handcuffs were on Green. The Carlton County Defendants thus request that this Court remove any reference to Deputy Peterson conducting the search.

The Court agrees with the Carlton County Defendants that the Amended Complaint and the record lack any indication that Deputy Peterson conducted the search. Paragraph 27 of the Amended Complaint alleges that staff from MSOP, rather than Deputy Peterson, performed the alleged search:

> Defendant Peterson assisted the strip search by removing [Carlton County's] handcuffs and allowing MSOP Defendants to place their handcuffs on Plaintiff and conducted the forced unclothed full body cavity strip search in front of female staff and an MSOP nurse. MSOP Defendants held Plaintiff down and forcibly cut his clothes off, humiliating him in the presence of female staff.

Further, Green clarifies in his opposition to the Carlton County Defendants' Motion to Dismiss that the "Carlton County [Defendants] did not participate in the strip search," and that "they called their supervisor because they disagreed with MSOP Defendants conducting a strip search." See Pl.'s Reply Mem. Law Resp. Carlton County Defs.' Reply [Docket No. 78] at 2.

5

Thus, the findings in the R&R are modified to remove any reference to Deputy Peterson conducting the search.

**C. Green's Motion to Accept Late Submission**

Green asks the Court to accept his tardily filed Objection to the R&R. The R&R was entered on Wednesday, January 30, 2019. Green states that he received the R&R in the mail on Monday, February 4, 2019. Under Federal Rules of Civil Procedure 6(a)(1)(C) and 72(b)(2), Green had until February 19, 2019 to mail his Objection. Green did not mail his Objection until February 20, 2019. Defendants do not argue that they were prejudiced by the one-day delay in filing. The Court grants the motion to accept Green's tardily filed Objection.

**D. Green's Objection**

Green objects to the portions of the R&R that conclude he has failed to state a claim for excessive force, procedural due process, and substantive due process. Obj. at 5–17. Green also argues that the R&R incorrectly concludes that Defendants are entitled to qualified immunity. Id. at 19–20. Green alternatively requests leave to amend the Amended Complaint to cure any deficiencies. Id. at 4–5, 17–19.

**1. Excessive Force Claims**

Green argues that the R&R erroneously concluded the Amended Complaint fails to state a claim for excessive force. Green contends that the case must proceed so that the record can be developed regarding whether Defendants' actions were objectively reasonable.

Excessive force claims brought by civilly committed individuals are analyzed under the same standard as pre-trial detainees. Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir. 2001). To bring a claim for excessive force under § 1983, "a pretrial detainee must show . . . that the force

6

purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015); Ryan v. Armstrong, 850 F.3d 419, 427 (8th Cir. 2017). Whether the force used was objectively unreasonable "turns on the facts and circumstances of each particular case." Kingsley, 135 S. Ct. at 2473 (quotations omitted). Relevant factors include the relationship between the need for force and the amount of force used, the extent of the plaintiff's injury, efforts by the officer to limit the amount of force, the severity of the security problem, the threat reasonably perceived by the officer, and whether the plaintiff was resisting. Id. "A court must also account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." Id. (internal quotations and alterations omitted).

The reasonableness of the force used "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396 (1989). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that . . . officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. at 396–97 (internal citation omitted). Because § 1983 liability is personal, each defendant's conduct must be independently assessed. Wilson v. Northcutt, 441 F.3d 586, 591 (8th Cir. 2006).

The Amended Complaint alleges that Defendants Swenson and Marvel used excessive

force on Green during the March 2011 altercation when Swenson shoved Green from behind into another MSOP staff member, and Marvel twisted Green's handcuffs while trying to remove his Do Rag and shoes. Am. Compl. ¶¶ 18–20, 23. The R&R concluded that these actions did not rise to the level of an excessive force claim because Green did not allege painful or lasting injuries from the actions. R&R at 12–13.

Although Green's failure to allege more than *de minimis* injury is not dispositive,[2] it suggests that the force used by Swenson and Marvel was *de minimis*. See Chambers v. Pennycook, 641 F.3d 898, 907 (8th Cir. 2011) ("A *de minimis* use of force is insufficient to support a claim, and it may well be that most plaintiffs showing only *de minimis* injury can show only a corresponding *de minimis* use of force.") (internal citation omitted). Additionally, the facts alleged do not suggest that the amount of force used was unreasonable in relation to the force required. Swenson shoved Green from behind into another person while attempting to deny Green access to the dining hall. Marvel twisted Green's handcuffs, but did so while trying to maintain security by removing Green's shoes and head wear. Thus the allegations in the Amended Complaint, assumed as true, do not establish that the particular force used by Swenson and Marvel under the circumstances was objectively unreasonable.

Even if Green could state a plausible claim against Swenson or Marvel for excessive

---

[2] In June 2011, the Eighth Circuit Court of Appeals clarified that "there is no uniform requirement that a plaintiff show more than *de minimis* injury to establish an application of excessive force." Chambers v. Pennycook, 641 F.3d 898, 907 (8th Cir. 2011). The Chambers Court reasoned that "[t]he degree of injury should not be dispositive, because the nature of the force applied cannot be correlated perfectly with the type of injury inflicted. Some plaintiffs will be thicker-skinned than others, and the same application of force will have different effects on different people." Id. at 906. However, the degree of injury is relevant to show the amount and type of force used. Id.

force, they would be entitled to qualified immunity. "An officer enjoys qualified immunity and is not liable for excessive force unless he has violated a clearly established right, such that it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Kingsley, 135 S. Ct. at 2474 (quotations omitted). Prior to the Eighth Circuit's June 2011 decision in Chambers v. Pennycook, "[i]t was not clearly established . . . that an officer violated the rights of an arrestee [or detainee] by applying force that caused only *de minimis* injury." 641 F.3d at 908. The force used by Swanson did not cause any injury, and the force used by Marvel caused only *de minimis* injury. Thus, at the time of the March 2011 incident alleged by Green, it would not have been clear to a reasonable officer that the force used by Swanson and Marvel was unlawful.

Green also appears to allege an excessive force claim against Defendant Sayovitz based on Sayovitz's informing MSOP Defendant Barbo on June 13, 2012 that Sayovitz intended to be given approval to conduct a UVBSS on Green. Am. Compl. ¶ 28. This allegation does not state a claim for excessive force because "[v]erbal threats are not constitutional violations cognizable under § 1983." Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985).

### 2. Unreasonable Search and Seizure Claims

Green also objects to the R&R's recommended dismissal of his unreasonable search and seizure claims. Green contends that the facts must be developed to determine whether the unclothed visual searches were conducted in a reasonable manner, and whether it was reasonable to confine Green to HSA and handcuff him for four hours while in HSA.

The Court agrees with the conclusion in the R&R that the facts alleged in the Amended Complaint do not establish that the searches and seizures were unreasonable. MSOP's policy

9

requires unclothed body searches when a detainee enters a new security area within MSOP or leaves the MSOP facility. Am. Compl. ¶ 43. This policy advances the interests of institutional security and public safety by ensuring that a detainee is not smuggling drugs, weapons, or other contraband. See Beaulieu v. Ludeman, 690 F.3d 1017, 1030 (8th Cir. 2012) ("[T]he MSOP's policy of performing unclothed body searches of patients before they leave the secure perimeter is not unreasonable."); Story v. Foote, 782 F.3d 968, 971 (8th Cir. 2015) (stating that "detention facilities are fraught with serious security dangers," and "correctional institutions have a strong interest in preventing and deterring the smuggling of money, drugs, weapons, and other contraband").

Green has not alleged any facts to suggest that the searches were conducted unreasonably. Although MSOP staff cut off his clothes with a scissors when performing the September 2010 and June 2012 searches, the actions were reasonable and appropriate because Green refused to comply with the searches. Am. Compl. ¶¶ 11, 34. Additionally, although the June 2012 search was allegedly conducted in front of female staff, this allegation does not render the search unreasonable. See Story, 782 F.3d at 972 (upholding reasonableness of body cavity search that may have been viewed by a female correctional officer through a security camera).[3]

Green also fails to alleged facts suggesting that his placement in HSA or remaining in handcuffs for four hours amounted to unreasonable seizures. The decision to place a civilly

---

[3] To the extent that Green alleges a claim against the Carlton County Defendants for failure to prevent the June 2012 search, the claim fails because the search itself was constitutional. See Anderson v. City of Hopkins, 805 F. Supp. 2d 712, 721 (D. Minn. 2011) ("[A] claim against an officer under § 1983 for failure to intervene or prevent harm necessarily assumes another officer violated plaintiff's constitutional rights."). Further, the Carlton County Defendants lacked the means to prevent the search from occurring because the search was performed on a MSOP detainee in an MSOP facility by MSOP staff pursuant to MSOP policy.

committed individual in HSA is presumptively valid if made by a professional. Youngberg v. Romeo, 457 U.S. 307, 323 (1982). "[L]iability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." Id. Green alleges no facts to show that his confinement in HSA was a departure from accepted practice or was not based on professional judgment. Thus, his confinement in HSA was not an unreasonable seizure.

Green's allegation that he was handcuffed for four hours on September 28, 2010 also does not amount to an unreasonable seizure. During this time, MSOP employees were waiting for Green to consent to a UVBSS. Am. Compl. ¶ 44. While Green refused to submit to a UVBSS, it was reasonable for MSOP staff to keep him handcuffed until he could be examined for weapons or other contraband.

To the extent that Green alleges an unlawful seizure claim against the Carlton County Defendants based on their arrest of Green on June 13, 2012, this claim fails because the Amended Complaint states that the Carlton County Defendants served Green with an arrest warrant. Am. Compl. ¶ 13. "An arrest executed pursuant to a facially valid warrant generally does not give rise to a cause of action under 42 U.S.C. § 1983 against the arresting officer." Fair v. Fulbright, 844 F.2d 567, 569 (8th Cir. 1988).

**3. Procedural Due Process Claims**

Green next objects to the R&R's recommended dismissal of his procedural due process claims. Green argues that his confinement in HSA for more than 24 hours and being handcuffed for four hours implicate protected liberty interests.

"To set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake. Second, the plaintiff must prove that the defendant deprived him of such an interest without due process of law." Schmidt v. Des Moines Pub. Sch., 655 F.3d 811, 817 (8th Cir. 2011).

In determining whether an official action has deprived a confined person of a protected liberty interest, a court must inquire whether the official action imposed an "atypical and significant hardship on the [confined person] in relation to the ordinary incidents of [confined] life." Wilkinson v. Austin, 545 U.S. 209, 223 (2005) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). Civilly committed persons are entitled to "more considerate treatment and conditions of confinement" than prisoners, but a civilly committed person's liberty interests are "considerably less than those held by members of free society." Senty-Haugen v. Goodno, 462 F.3d 876, 886 (8th Cir. 2006). Green's placement in HSA for more than 24 hours and being handcuffed for four hours did not impose a significant and unusual hardship in relation to the ordinary incidents of life at a secured facility such as MSOP.

Additionally, even if Green had sufficiently alleged a that he was deprived of a protected liberty interest, he does not allege any facts to show that he received less process than was due. For example, he does not allege that he invoked MSOP's grievance procedure to challenge his HSA placement. See Am. Compl. ¶ 45 (outlining MSOP's grievance procedure for challenging placement in HSA).

### 4. Substantive Due Process Claims

Green also objects to the R&R's recommendation that his substantive due process claims be dismissed. To plead a claim for substantive due process, a plaintiff must allege facts showing

the defendant's actions were "conscious shocking" and violated a "fundamental liberty interest." See Karsjens v. Piper, 845 F.3d 394, 408 (8th Cir. 2017) (specifying standard for substantive due process claim). The R&R correctly applied this standard and concluded that Green has not alleged conduct by Defendants that shocked the conscience.

### 5. Constitutional Challenge to MSOP Policies

The R&R recommends dismissing with prejudice Green's claim that MSOP's UVBSS policy is unconstitutional. Green requests that the R&R be modified to dismiss the claim without prejudice so that he may have an opportunity to cure the deficiencies in the Amended Complaint. This request is denied because Green does not specify what additions or corrections he would or could make that would cure the deficiencies.

### 6. Qualified Immunity

Green generically argues that Defendants are not entitled to qualified immunity because he has alleged facts supporting his claims that Defendants' conduct violated his clearly established constitutional rights. This argument fails because the Amended Complaint does not allege sufficient facts to establish that Green's constitutional rights were violated by any Defendant.

### 7. Request to File Second Amended Complaint

Finally, Green requests leave to amend the Amended Complaint to give him an opportunity to "correct any deficiencies." Obj. at 19. Rule 15(a) of the Federal Rules of Civil Procedure instructs that leave to amend the complaint be given freely if justice so requires. Fed. R. Civ. P. 15(a). However, a court has discretion to deny leave to amend under any of the following circumstances: "undue delay, bad faith or dilatory motive on the part of the movant,

repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment." Foman v. Davis, 371 U.S. 178, 182 (1962).

Green has already amended his Complaint once, and there is no indication that he will be able to cure the deficiencies in the Amended Complaint by amending his Complaint a second time. Green does not identify what, if any, additional facts he would allege that would be sufficient to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). Based on Green's pleadings thus far, it appears that a second amended complaint would be futile. Although the Court recognizes Green's pro se status, justice does not require leave to once again amend the Complaint.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants Kelly Lake, Jesse Peterson, and Anthony Bastien's Objection [Docket No. 95] to the R&R is **SUSTAINED**;

2. Plaintiff Anthony C. Green's Motion to Accept Late Submission [Docket No. 96] is **GRANTED**;

3. Green's Objection [Docket No. 97] to the R&R is **OVERRULED**;

4. The Report and Recommendation [Docket No. 94] is **ADOPTED IN PART** and **MODIFIED IN PART** as stated above;

5. Defendants' Motions to Dismiss [Docket Nos. 22, 35, 53, and 66] are **GRANTED**; and

14

6. The Amended Complaint [Docket No. 14] is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: March 25, 2019.